UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LISA BARDSLEY, *individually and on behalf of all others similarly situated*,

                                        Plaintiff,

         -against-

NONNI'S FOODS LLC,

                                        Defendant.

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____              │
│ DATE FILED: __03/16/2022__           │
└─────────────────────────────────────┘
```

No. 20 Civ. 2979 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

This putative class action alleges that Defendant Nonni's Foods LLC misrepresented to consumers the extent to which its "Limone Biscotti" from its Nonni's brand ("the Product") is flavored only or predominantly from lemons. (Am. Compl. at 1–9, ECF No. 17.) Plaintiff Lisa Bardsley, individually and on behalf of others similarly situated, brings this action against Defendant asserting claims for violations of New York's General Business Law §§ 349 and 350, negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, fraud, and unjust enrichment. (*Id.* at 9–14.) Presently pending before the Court is Defendant's motion to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) and (6). (ECF No. 23.) For the following reasons, the Court GRANTS IN PART, DENIES IN PART Defendant's motion to dismiss.

## BACKGROUND

### I. Factual Background

The following facts are derived from the Amended Complaint and are taken as true and constructed in the light most favorable to Plaintiff for the purposes of this motion.

Defendant manufactures, distributes, markets, labels, and sells singular long, crisp, twice-baked Italian cookies (biscotti) purporting to be flavored mainly or exclusively by lemon, as depicted in the image below:



(Am. Compl. ¶¶ 1, 3.) The label also states that the Product's ingredients include:

> **Ingredients:** WHEAT FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, SUGAR, WHITE CONFECTIONERY SUGAR COATING (SUGAR, PALM KERNEL OIL, WHOLE MILK POWDER, REDUCED MINERAL WHEY POWDER, NONFAT MILK POWDER, SOY LECITHIN [AN EMULSIFIER], SALT, AND VANILLA), EGGS, SALTED BUTTER (SWEET CREAM, SALT) NATURAL FLAVOR, BAKING POWDER (SODIUM ACID PYROPHOSPHATE, BAKING SODA, CORN STARCH, MONOCALCIUM PHOSPHATE), SALT

(*Id.* ¶ 12.)

Plaintiff alleges the Product's label is misleading because the Product is neither exclusively nor predominantly flavored from lemons.  (*Id.* ¶¶ 10–11, 13–27.)  Specifically, she claims that the

Product's ingredients list includes a "natural flavor," which means that the lemon flavor is not derived exclusively from lemons. (*Id.* ¶ 13.) She alleges that this ingredient contains a *de minimis* amount of lemon oil and that the lemon taste it provides is mainly from lemon oil extenders and enhancers from non-lemon sources. (*Id.* ¶¶ 14, 20.) Plaintiff claims that under federal regulations, Defendant's Product is misleading because it fails to disclose that the source of the lemon taste is not only from lemons but from non-lemon sources. (*Id.* ¶¶ 23–26.)

Plaintiff also alleges that laboratory testing of the Product reveals that "[t]hough [it contains] citral, the main flavor compound in lemons, through the isomers neral and geranial, it lacks other compounds essential to a lemons taste." (*Id.* ¶ 31.) Hence, she claims that "the Product's flavoring lacks the complexity and taste expected by consumers because the added lemon oil extenders ('Other Natural Flavor') mainly provide citrus notes, instead of the balanced flavor of lemons." (*Id.* ¶ 34.)

Plaintiff claims that Defendant's omission and failure to disclose these facts is deceptive and misleading to consumers who want a lemon-flavored product that contains flavoring mainly from lemons and that tastes like lemon. (*Id.* ¶ 36.) She avers that Defendant knows consumers "are willing to pay higher prices for the real thing because flavor from a characterizing ingredient involves minimal and less processing—it is more natural." (*Id.* ¶¶ 6, 35.) As such, Plaintiff claims that Defendant's branding and packaging of the Product is designed to, and does, deceive, mislead, and defraud plaintiffs and consumers. (*Id.* ¶ 38.) She also claims that Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers. (*Id.* ¶ 39.) Particularly, Plaintiff claims that as a result of the false and misleading representations, Defendant sold the Product at a premium price, approximately no less than $3.98 per box of 8, excluding tax, compared to other similar products

represented in a non-misleading way, and higher than it would be sold absent the misleading representations and omissions. (*Id.* ¶ 42.)

Plaintiff alleges that she purchased the Product on at least one occasion, including in October 2019 at the Hannaford Supermarket in New Windsor, New York 12553. (*Id.* ¶ 54.) She claims to be among a class of consumers who bought the Product for its intended use, and that she relied upon the front label's representations to expect a lemon taste that would come exclusively and/or predominantly from real lemons and not from artificial lemon flavorings. (*Id.* ¶ 55.) Plaintiff further claims that she would not have paid as much for the Product absent Defendant's false and misleading statements and omissions. (*Id.* ¶¶ 57–59.)

## II. Procedural Background

On April 13, 2020, Plaintiff filed the original operative class action complaint (Compl., ECF No. 1.) On October 2, 2021, Defendant filed a letter seeking leave to file a motion to dismiss, which also stated the grounds on which Defendant would move for dismissal. (ECF No. 13.) Four days later, Plaintiff requested an extension of time to file an amended complaint that would address the deficiencies set forth in Defendant's letter and obliviate the need for a motion to dismiss, which the Court subsequently granted. (ECF Nos. 15 & 16.) On December 1, 2020, Plaintiff filed her Amended Complaint on behalf of all purchasers of the Product who reside in New York, asserting claims for (1) violation of New York General Business Law §§ 349 and 350; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) violation of the Magnuson Moss Warranty Act; (5) negligent misrepresentation; (6) fraud; and (7) unjust enrichment. (Am. Compl., ECF No. 17.) As relief, Plaintiff seeks both monetary damages and injunctive relief that would require Defendant to correct the Product's allegedly misleading label. (*Id.*)

On December 23, 2021, Defendant again sought leave to file a motion to dismiss, which the Court subsequently granted and issued a briefing schedule. (ECF Nos. 20 & 22.) On March 23,

2021, the parties filed their respective briefing on the instant motion: Defendant its notice of motion (ECF No. 23), memorandum in support ("Motion," ECF No. 24), reply ("Reply," ECF No. 25); and Plaintiff her response in opposition ("Response in Opposition," ECF No. 26).

**LEGAL STANDARD**

### I.  Federal Rule of Civil Procedure 12(b)(1)

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of establishing the existence of federal jurisdiction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992).

Where, as here, the jurisdictional challenges are raised at the pleading stage, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Sharkey v. Quarantillo,* 541 F.3d 75, 83 (2d Cir. 2008). It is "presume[d] that general [fact] allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889 (1990) (alterations added). The court also may consider affidavits and other evidence outside the pleadings to resolve the jurisdictional issue, but it may not rely on conclusory or hearsay statements contained in affidavits. *J.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir. 2004), *cert. denied,* 544 U.S. 968 (2005). Indeed, courts "must" consult factual submissions "if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction." *Robinson v. Gov't of Malaysia,* 269 F.3d 133, 140 n. 6 (2d Cir. 2001).

### II.  Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to

5

dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiff asserts claims against Defendant for (1) violations of New York General Business Law ("GBL") §§ 349 and 350, (2) negligent misrepresentation, (3) breach of express warranty, (4) breach of implied warranty of merchantability, (5) violation of the Magnuson Moss Warranty Act ("MMWA"), (6) fraud, and (7) unjust enrichment.  (*See* Am. Compl. at 9–14.) Defendant seeks to dismiss all claims based on several grounds, including: (1) lack of subject matter jurisdiction; (2) failure to plausible allege consumer deception; and (3) federal preemption. (*See* Mot. at 12–29.)

Accordingly, the Court must first address Defendant's challenge to subject matter jurisdiction and will only analyze Defendant's remaining arguments if the Court has subject matter jurisdiction over this case. *See Brokamp v. James*, --- F. Supp. 3d ---, No. 121CV00389DNHATB, 2021 WL 5444277, at *2 (N.D.N.Y. Nov. 22, 2021) ("Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the motion court must address the 12(b)(1) motion first." (citations omitted).)

I.    **Subject Matter Jurisdiction**

In the Amended Complaint, Plaintiff claims that this Court has subject matter jurisdiction over his state law claims based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). (Am. Compl. ¶ 43.) "CAFA amended the federal diversity jurisdiction statute to confer federal jurisdiction over class actions where: (1) the proposed class contains at least 100 members (the 'numerosity' requirement); (2) minimal diversity exists between the parties, (*i.e.*, where 'any member of a class of plaintiffs is a citizen of a State different from any defendant'); and (3) the aggregate amount in controversy exceeds $5,000,000." *Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 213 (2d Cir. 2013) (quoting 28 U.S.C. § 1332(d)(2)-(6)).

Plaintiff also asserts a federal law claim under the MMWA, which provides that "[n]o claim shall be cognizable in a suit" before a federal district court "if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B); *see also Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 241 (2d Cir. 1986) (describing federal jurisdictional requirements under the Act).

Because Plaintiff actually raises both individual and class action claims, the Court must consider whether jurisdiction is proper under both sets of claims. *See Schwartz v. Hitrons Solutions, Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (plaintiff "brings both individual and class action claims, which must meet the requirements of 28 U.S.C. [§] 1332(a) . . . or 28 U.S.C. [§] 1332(d)[.]").

A.    *The amount of controversy for Plaintiff's individual claims do not meet the statutory requirements*

Defendant first claims that the Court lacks subject matter jurisdiction over Plaintiff's individual claims because she failed to plead any facts or legal theory that would reasonably lead

to a finding of $75,000 in damages, such that she satisfies the amount of controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332(a). (Mot. at 12–13.)

For this Court to exercise diversity jurisdiction under § 1332(a), there must be "(1) complete diversity between the parties, and (2) an amount in controversy in excess of $75,000.00." *Schwartz*, 397 F. Supp. 3d at 364 (citations omitted). Further, as mentioned above, the amount of controversy must be no less than $50,000 for Plaintiff's MMWA claim to be cognizable before this Court. *See* 15 U.S.C. § 2310(d)(3)(B); *see also Abraham*, 795 F.2d at 241. Plaintiff bears the burden of proving that there is a "reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citation omitted).

Here, Plaintiff alleges that she purchased the Product at least once in October 2019. (Am. Compl. ¶¶ 53–54.) While she does not specifically allege what she paid for the Product, Plaintiff alleges that Defendant sells the Product "at a premium price, approximately no less than $3.98 per box of 8, excluding tax[.]" (*Id.* ¶ 42.) Hence, assuming that Plaintiff proves her individual claims, her actual damages would be no more than the difference between the price she paid for the Product and the Product's true value absent Defendant's alleged misrepresentations and omissions. This measure of damages is applicable to each of Plaintiff's individual claims. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 412 (S.D.N.Y. 2015) (*GBL §§ 349 and 350*) ("Damages are measured by the difference 'between what the plaintiff paid and the value of what the plaintiff received." (citations omitted)); *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996) (*negligent misrepresentation* and *fraud*) ("Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained" or "profits which would have been realized in the absence of fraud."); *Carney v. Bos. Mkt.*, No. 18

8

CIV. 713 (LGS), 2021 WL 2158016, at *4 (S.D.N.Y. May 27, 2021) (*breach of express and implied warranty*) ("The damages (or amount recoverable) for breach of the warranty of merchantability are generally the difference between the value of the goods if they had been as expected and the value of the goods given to the buyer." (citing N.Y. U.C.C. Law § 2-714(2); *Shuldman v. DaimlerChrysler Corp.*, 768 N.Y.S.2d 214, 217 (2d Dep't 2003) (recognizing that a plaintiff may recover damages for breach of an implied warranty under N.Y. U.C.C. Law §§ 2-714, 2-715)."))); *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 809–10 (S.D.N.Y. 2012) (*unjust enrichment*) ("Because the doctrine of unjust enrichment is grounded in restitution, the measure of damages for an unjust enrichment claim is based on the amount of benefit retained by the defendant, rather than by a plaintiff's loss."). In short, Plaintiff's actual damages for all her individual claims must necessarily amount to no more than $3.98.

But notably, for her GBL claims, Plaintiff can recover either her actual damages or $50 (under § 349) and $500 (under § 350), whichever is greater. *See* N.Y. Gen. Bus. Law § 349(h) ("[A]ny person who has been injured by reason of any violation of this section may bring an action in his own name . . . to recover his actual damages or fifty dollars, whichever is greater[.]") *id.* § 350-e(3) ("[A]ny person who has been injured by reason of any violation of section three hundred fifty or three hundred fifty-a of this article may bring an action in his or her own name . . . to recover his or her actual damages or five hundred dollars, whichever is greater[.]").

Even then, however, there is no reasonable probability that Plaintiff can satisfy the jurisdictional amount of $75,000 for any of her individual claims.  Moreover, nor can Plaintiff satisfy the jurisdictional amount of $50,000 for her federal MMWA claim. Therefore, the Court concludes that Plaintiff has failed to plead any facts or legal theory that would reasonably lead to a finding of $75,000 (for her state law claims) or $50,000 (for her federal MMWA claim) in

damages, such that this Court can exercise subject matter jurisdiction over her individual claims. Accordingly, the Court dismisses Plaintiff's individual claims for lack of subject matter jurisdiction.

B.  *But Defendant fails to show to a legal certainty that Plaintiff and the putative class cannot recover the aggregate amount of controversy required under CAFA*

As mentioned above, CAFA confers federal jurisdiction over class actions where: (1) the proposed class contains at least 100 members (the 'numerosity' requirement); (2) minimal diversity exists between the parties, (*i.e.*, where 'any member of a class of plaintiffs is a citizen of a State different from any defendant'); and (3) the aggregate amount in controversy exceeds $5,000,000." *Purdue Pharma L.P.*, 704 F.3d at 213 (quoting 28 U.S.C. § 1332(d)(2)-(6)). Here, Defendant contends that Plaintiff fails to meet the third factor: the aggregate amount in controversy exceeding $5,000,000. (Mot. at 13–17.)

"Under CAFA, as under the traditional rule, the party asserting subject matter jurisdiction has the burden of proving it." *Galeno,* 472 F.3d at 59. As such, Plaintiff bears the burden of "proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Scherer*, 347 F.3d at 397 (citation omitted); *see also Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000) (noting that the "reasonable probability" burden is identical for class action claims). The "reasonable probability" burden is minimal at the pleading stage because "a rebuttable presumption [exists] that the face of the complaint is a good faith representation of the actual amount in controversy[.]" *Scherer*, 347 F.3d at 397 (citation omitted). However, the presumption "is available only if the face of the complaint alleges facts plausibly suggesting the existence of claims aggregating over the jurisdictional minimum amount in controversy." *Wood v. Maguire Auto. LLC*, No. 09 Civ. 0640, 2011 WL 4478485, at *2 (N.D.N.Y. Sept. 26, 2011). Conclusory allegations that the amount-in-controversy requirement is satisfied are

10

insufficient. *See John Wiley & Sons, Inc. v. Glass*, No. 10 Civ. 598, 2010 WL 1848226, at *3 (S.D.N.Y. May 7, 2010); *see also Valente v. Garrison From Harrison LLC*, No. 15 Civ. 6522, 2016 WL 126375, at *2 (E.D.N.Y. Jan. 11, 2016) ("[B]oilerplate pleadings do not suffice to establish that [an] action involves an amount in controversy adequate to support federal diversity jurisdiction.").

Defendant can overcome this rebuttable presumption if it can show to "a legal certainty that . . . [P]laintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006). To overcome the presumption, "the legal impossibility of recovery must be so certain as virtually to negate the plaintiff's good faith in asserting the claim." *Scherer*, 347 F.3d at 397.

Defendant is not limited to the pleadings in overcoming this presumption. To be sure, at the motion to dismiss stage, the Court must evaluate the jurisdictional facts pertaining to the amount in controversy based on the pleadings and "construe all ambiguities and draw all inferences" in Plaintiff's favor. *Aurecchione v. Schoolman Transp. Sys.*, 426 F.3d 635, 638 (2d Cir. 2005). But when appropriate, a court "may look outside the pleadings to other evidence on the record." *United Food & Commercial Workers Union Local 919, AFL-CIO v. CenterMark Props. Meriden Square Inc.*, 30 F.3d 298, 305 (2d Cir. 1994). Courts may consider materials such as affidavits, documents, and testimony to determine whether jurisdiction exists. *See Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero),* 600 F.3d 171, 175 (2d Cir. 2010); *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003). Despite this burden-shifting framework that places the onus on defendants to overcome the rebuttable presumption by making a strong showing of lack of jurisdiction, in close cases, any "doubts are resolved against [jurisdiction] out of respect for the

limited jurisdiction of the federal courts and the rights of states." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (internal quotation marks omitted).

Finally, courts treat the three categories of relief Plaintiff seeks differently for purposes of calculating the amount in controversy. The first, and most straightforward, category is the actual and statutory damages sought by a plaintiff. All alleged actual and statutory damages may be considered to meet amount-in-controversy requirements. Second, attorney's fees may be counted to satisfy the amount-in-controversy threshold only "if they are recoverable as a matter of right pursuant to statute or contract." *Schwartz*, 397 F. Supp. 3d at 366 (citations omitted). Third, with respect to Plaintiff's request for injunctive relief, the amount in controversy is determined by valuing the object of litigation. *See Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977). In the Second Circuit, courts value the object of the litigation from the plaintiff's standpoint; "the value of the action's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." *Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 49 (2d Cir. 1972) (internal quotation marks omitted).

Here, Defendant claims it can establish to a "legal certainty," through the affidavit of its Vice President of Sales, that Plaintiff cannot satisfy the amount in controversy requirement because (1) Defendant only sold the Product for less than nine months, and (2) total sales of the Product during those nine months was $101,771.88. (Mot. at 15; *see also* ECF No. 20-1 at 4, ¶¶ 4–5.) As such, Defendant argues that when considering the limits to the maximum penalties that can be awarded under GBL §§ 349 and 350 and the Product's total sales, at most, Plaintiff and the

putative class can only recover $305,315.64—substantially below the $5 million threshold requirement. (Mot. at 17.)

While Defendant's argument appears valid on its face, Defendant advances its argument solely by relying on the two-page affidavit of his Vice President of Sales without any accompanying documentary support whatsoever. "A single affidavit with no accompanying documentary support, however, is not conclusive." *Schwartz*, 397 F. Supp. 3d at 367. Certainly, "[t]he court also may consider affidavits and other evidence outside the pleadings to resolve the jurisdictional issue, but it may not rely on conclusory or hearsay statements contained in affidavits." *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004), *cert. denied*, 544 U.S. 968 (2005). In effect, the affidavit Defendant submits here stands in stark contrast with those that defendants submitted in other cases dealing with similar jurisdictional disputes. *See, e.g.*, *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 55 (2d Cir. 2006) ("Blockbuster then filed under seal with the district court a declaration by its senior vice president and corporate controller, James Howell, that described the total amount of restocking fees and converted sales incurred by New York customers under the no-late-fee program from January 1, 2005 to May 19, 2005."); *Smith v. Manhattan Club Timeshare Ass'n*, Inc., 944 F. Supp. 2d 244, 250 (S.D.N.Y. 2013) ("Defendants submitted the sworn affidavit of Scott L. Lager, Vice President of The Manhattan Club, with five exhibits annexed thereto.").

Therefore, the Court finds that Defendant fails to overcome the presumption that Plaintiff has made a good faith representation of the actual amount in controversy in showing "the legal impossibility of recovery must be so certain as virtually to negate [Plaintiff's] good faith in asserting the claim." *Scherer*, 347 F.3d at 397. Accordingly, the Court now addresses the merits of Defendant's motion under Rule 12(b)(6).

## II.  New York General Business Law Sections 349 and 350

Defendant next argues that, even if the Court has subject matter jurisdiction over this case, Plaintiff nonetheless still fails to assert a plausible claim under GBL §§ 349 and 350 by alleging that the Product's packaging is misleading because she merely asserts conclusory allegations. (Mot. at 18–21.) But after due consideration, the Court concludes that Plaintiff has sufficiently alleged that a reasonable consumer could find the Product's packaging misleading.

### A.    Plaintiff sufficiently alleges that the Product's packaging is misleading

GBL § 349 involves unlawful deceptive acts and practices, while § 350 involves unlawful false advertising. "The standard for recovery under [§] 350, while specific to false advertising, is otherwise identical to [§] 349." *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 396 (2010) (quoting *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)). The elements of a cause of action under both §§ 349 and 350 are that: "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Id.* (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)). The parties' main dispute in the instant motion involves the second element: whether Defendant engaged in deceptive or materially misleading acts or practices.

To be actionable, the alleged deceptive act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26; *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). In determining whether a reasonable consumer would be misled, "[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Pichardo v. Only What You Need, Inc.*, 20-cv-493 (VEC), 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020) (citing *Wurtzburger v. Kentucky Fried Chicken*, 16-cv-08186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13,

14

2017)); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Oswego*, 85 N.Y.2d at 26).

Here, the core issue behind the plausibility of Amended Complaint's allegations is whether a reasonable consumer would be misled by Defendant's statement in the Product's packaging that the Product is "Made with Real . . . Lemon Zest Oil." In determining such issue, the Court finds the Second Circuit case of *Mantikas v. Kellog Co.*, 910 F.3d 633 (2d Cir. 2018), particularly instructive.

*Mantikas* concerned the packaging of Cheez-Its crackers, the boxes of which were conspicuously labeled "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN." But in that case, the grain content was indisputably comprised of predominantly enriched white flour and a smaller amount of whole grain flour. The product's packaging in that case disclosed the number of grams of whole grain per serving (5 or 8 grams per serving size) and the Nutrition Facts panel accurately listed the crackers' actual composition: a serving size was 29 total grams and the first ingredient listed was "enriched white flour." Despite these disclosures, the Second Circuit held that the plaintiffs had stated a plausible claim because the crackers' labeling "falsely impl[ied] that the grain content is entirely or at least predominantly whole grain, whereas in fact, the grain component consisting of enriched white flour substantially exceeds the whole grain portion." *Id.* at 637. Therefore, even the technically accurate Nutrition Facts panel did not "render [p]laintiffs' allegations of deception implausible." *Id.* Rather, the Court concluded that "a reasonable consumer

should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Id.*

The Court is of the view that the same principle applies here. To begin, the Product's packaging expressly represents that the Product is "Made with Real Sugar, Butter, and Lemon Zest Oil." Considering it in the light most favorable to Plaintiff, this statement suggests to a reasonable consumer that the Product's ingredients include butter, sugar, and lemon zest oil, and when viewed in context with the Product's lemon flavor, that the source of that flavor must be the lemon zest oil. Thus, given that the Product's ingredient panel does in fact list butter and sugar but not lemon zest oil, "[t]hat representation is adequately pleaded to have been misleading [to a reasonable consumer] because it falsely implies that [lemon zest oil] is the primary [source of the lemon flavoring] in the product, when it is not." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 386 (S.D.N.Y. 2021).

"Indeed, in some respects, this case presents a stronger case of misrepresentation than in *Mantikas*." *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 102 (E.D.N.Y. 2020). "There, the disputed ingredient, whole grain, was at least present in a discernable quantity (5 to 8 grams out of a serving size of 29 grams)." *Id.* "In contrast, [Plaintiff] here allege[s] that the desired or preferred ingredient is . . . *de minimis* [or a trace amount] in quantity when compared to" the other multiple flavoring ingredients comprising the "Natural Flavor" ingredient. *Id.*; *see also* 21 C.F.R. § 101.4 (generally requiring ingredients to be listed "in descending order of predominance by weight").

To be sure, the Amended Complaint does not allege that lemon zest oil is entirely absent as an ingredient in the Product. In fact, the Amended Complaint appears to concede that lemon zest oil is part of the "Natural Flavor" ingredient, although it alleges that it is part of it in a *de*

*minimis* or trace amount. At first blush, this concession would seem self-defeating in light of the representation on the front label that the Product is "Made with Real . . . Lemon Zest Oil." However, the Second Circuit rejected a similar argument in *Mantikas*:

> [T]he rule that [d]efendant contends emerges from these district court decisions – that, as a matter of law, it is not misleading to state that a product is made with a specified ingredient if that ingredient is in fact present – would validate highly deceptive advertising and labeling. Such a rule would permit [d]efendant to lead consumers to believe its Cheez-Its were made of whole grain so long as the crackers contained an iota of whole grain, along with 99.999% white flour. Such a rule would validate highly deceptive marketing.

*Mantikas*, 910 F.3d at 638. Other courts in this Circuit have similarly ruled in analogous cases. *See, e.g.*, *Sharpe*, 481 F. Supp. 3d at 104 ("A chocolate chip cookie may not necessarily be comprised predominantly of chocolate (one can only dream), but it would still likely be misleading to label it as 'Made With Natural Chocolate' if the cookie's chocolate's content is 99.999% artificial and synthetic. Likewise, a frozen pizza manufacturer that labels its products as 'Made with Real Pepperon' likely cannot prevail at the motion to dismiss stage under *Mantikas* by unabashedly using 99.999% artificial or synthetic meat fillers and simply arguing a pizza's main ingredient is dough. The list goes on."); *Campbell*, 516 F. Supp. 3d at 387 (rejecting defendant's argument that "so long as there is any honey in the product, the references in the packaging cannot be deceptive" under *Mantikas*).

Accordingly, the Court concludes that Plaintiff has sufficiently alleged that the Product's packaging is misleading for purposes of her claims under GBL §§ 349 and 350.

### B.    *Plaintiff's claims are not preempted under the Food, Drug, and Cosmetic Act*

But Defendant contends that even if Plaintiff plausibly alleges consumer protection claims under GBL §§ 349 and 350, her claims are still preempted by the Food, Drug, and Cosmetic Act ("FDCA") as amended by the Nutrition Labeling and Education Act ("NLEA"). Specifically, Defendant reasons that because the Product's label complies with federal law and regulations,

Plaintiff's claims appear to impose additional or different food labeling requirements that are inconsistent with those imposed by the FDCA. (Mot. at 21–25.)

Because a defendant asserting preemption bears the burden of proving that it applies, the Court will determine whether Defendant carries its burden. *See Bruesewitz v. Wyeth LLC,* 562 U.S. 223, 251 n.2 (2011) ("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof") (citations omitted). After due consideration, the Court concludes that Defendant has failed to do so.

Under the Supremacy Clause of the Constitution, state laws are invalid if they "interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution." *Gibbons v. Ogden,* 22 U.S. 1, 211 (1824). Federal law can preempt state law if Congress expresses its intent to preempt the law through explicit statutory language ("express preemption") or, in the absence of explicit statutory language, if the state law regulates conduct in a field that Congress intended the federal government to occupy exclusively ("field preemption") or directly conflicts with federal law ("conflict preemption"). *See N.Y. Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654 (1995); *Green Mountain R.R. Corp. v. Vermont,* 404 F.3d 638, 641 (2d Cir. 2005). Here, only express preemption is at issue.

Where a statute includes an express preemption clause, "[the court] do[es] not invoke any presumption against pre-emption but instead 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Puerto Rico v. Franklin California Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citing *Chamber of Commerce of United States of America v. Whiting,* 563 U.S. 582, 594 (2011)); *see also Canale v. Colgate-Palmolive Co.*, 258 F.Supp.3d 312, 319–20 (S.D.N.Y. 2017) ("where . . . Congress has expressly manifested its intent

to preempt state law, no presumption against preemption arises"). Here, Congress has expressly

manifested such intent in the FDCA:

> (a) Except as provided in subsection (b), no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . .
>
> (5) any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title, except a requirement respecting a claim made in the label or labeling of food which is exempt under section 343(r)(5)(B) of this title.

21 U.S.C. § 343-1(a)(5).

"The [FDCA] . . . forbids the misbranding of food, including by means of false or

misleading labeling." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 106 (2014) (citing

21 U.S.C. §§ 331, 343). The NLEA, which amended the FDCA, requires labeling of packaged

foods, regulates the making of claims about the nutrient content of foods, and expressly preempts

state law requirements regarding nutrient content claims. *See* 21 U.S.C. §§ 343(q), 343(r), 343-

1(a)(5). In 21 U.S.C. § 343-1(a)(5), Congress established, in relevant part:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce .... any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title, except a requirement respecting a claim made in the label or labeling of food which is exempt under section 343(r)(5)(B) of this title.

That said, however, "[w]here federal requirements address the subject matter that is being

challenged through state law claims, such state law claims are preempted to the extent they do not

impose identical requirements." *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*,

588 F.Supp.2d 527, 538 (S.D.N.Y. 2008). Therefore, in determining whether Plaintiff's consumer

protection claims are preempted by the FDCA, the Court must determine whether such claims seek

to impose requirements that are affirmatively different from the requirements in the FDCA. *See*

*id.* at 532 ("Stated differently," "the only state requirements that are subject to preemption are those that are affirmatively different from the Federal requirements.").

    As relevant here, section 343 of the FDA delineates the ways by which food can be misbranded. For example, section 343(a) provides that "[a] food shall be deemed to be misbranded if its labeling is false or misleading in any particular." 21 U.S.C. § 343(a). Then, section 343(i) provides that a food shall be deemed misbranded

> [u]nless its label bears (1) the common or usual name of the food, if any there be, and (2) in case it is fabricated from two or more ingredients, the common or usual name of each such ingredient . . . except that . . . flavorings . . . may be designated as . . . flavorings without naming each."

*Id.* § 343(i).

    Further, the Food and Drug Administration ("FDA") has promulgated comprehensive rules governing flavoring information, found at 21 C.F.R. § 101.22, which set forth further requirements with respect to how flavorings must be included in a product's packaging. Notably, the regulation defines the terms "natural flavor" or "natural flavoring," in relevant part, as

> the essential oil, oleoresin, essence or extractive . . . which contains the flavoring constituents derived from a . . . fruit or fruit juice . . . whose significant function in food is flavoring rather than nutritional. Natural flavors include the natural essence or extractives obtained from plaints listed in [21 C.F.R.] § 182.20."

21 C.F.R. § 101.22(a)(3). In turn, 21 C.F.R. § 182.20 includes lemon, lemon balm, lemon grass, and lemon peel.

    Here, Defendant first contends that the Product's labeling complies with the FDCA and the FDA's regulations on flavoring because it "clearly informs the consumer that the Product is flavored with 'natural flavor' in conformance with the FDCA and its accompanying regulations." (Mot. at 24.) Defendant consequently contends that Plaintiff's claims seek to impose additional obligations different or contrary to the federal requirements because she alleges the Product fails

to disclose that its lemon flavor "is not *only* from lemons but from non-lemon sources." (*Id.* at 25; Am. Compl. ¶ 25 (emphasis in original).) But the Court disagrees.

Notably, Defendant overlooks that 21 C.F.R. § 101.22(a)(1)(iii) *also* requires that

(i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:

(1) If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food, except that:

. . .

(iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

21 C.F.R. § 101.22(a)(1)(iii).

Simply put, the regulation requires a packaging representing that the food it contains has a primary recognizable flavor, and the food contains no artificial flavoring simulating, resembling, or reinforcing such characterizing flavor—*but* does contain "both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor," then the packaging must include the words "with other natural flavor" immediately after the name of the food it contains.

With all that in mind, the Court concludes that Plaintiff's consumer protection claims are not preempted by the FDCA because her claims do not affirmatively seek to impose additional or different requirements other than those the statute already imposes. When construing the Amended Complaint in the light most favorable to her, Plaintiff alleges that because (1) the packaging here represents that the Product is "Made with Real . . . Lemon Zest Oil," (2) contains no artificial flavoring, and (3) contains natural flavors not only from lemons but from non-lemon sources (as it only contains *a de minimis* amount of lemon zest oil), then the Product's packaging fails to comply with 21 C.F.R. § 101.22(a)(1)(iii) as it fails to include the words "with other natural flavor" immediately after the food's name. (*See* Am. Comp. ¶¶ 22–25.) Accordingly, the Court concludes that Defendant fails to carry its burden in asserting that the FDCA preempts Plaintiff's consumer protection claims under GBL §§ 349 and 350.

### C.     *The safe harbor provisions in GBL §§ 349 and 350 are inapplicable here*

On that same basis, the Court concludes that Defendant fails to carry its burden in asserting an affirmative defense under the safe harbor provisions in GBL §§ 349 and 350.

"[T]he GBL's safe harbor provisions . . . provide[ ] a complete defense [when] the act or practice at issue is subject to and complies with federal rules and regulations . . . ." *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 465 (S.D.N.Y. 2019); *see also* N.Y. Gen. Bus. Law § 349(d) ("In any such action it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts."), *id.* § 350-d ("In any such action it shall be a complete defense that the advertisement is subject to and complies with the rules and regulations of, and the statutes administered by the Federal Trade

Commission or any official department, division, commission or agency of the state of New York.").

Here, Defendant fails to carry its burden in asserting an affirmative defense under the safe harbor provisions because Defendant does not point to any facts appearing on the face of the Amended Complaint that support its affirmative defense: that the Product's packaging complied with the federal requirements under the FDCA and its implementing regulations. *See United States v. Space Hunters, Inc.*, 429 F.3d 416, 426 (2d Cir. 2005) ("A court may dismiss a claim on the basis of an affirmative defense only if the facts supporting the defense appear on the face of the complaint.") If anything, as discussed above, when construing the Amended Complaint's allegations in the light most favorable to her, Plaintiff sufficiently alleges that Product's packaging fails to comply with the applicable federal requirements under the FDCA and its implementing regulations.[1]

### III. Negligent Misrepresentation

"To state a claim for negligent misrepresentation under New York law, the plaintiff must allege that '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.' " *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (quoting *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227

---

[1] That said, to the extent Plaintiff attempts to bring a separate cause of action premised on an alleged violation of an FDA regulation, the Court dismisses such claim because there is no private right of action to enforce FDA regulations. *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997); *Boata v. Pfizer, Inc.*, No. 10-cv-4390, 2010 WL 4878872, at *5 (S.D.N.Y. Dec. 1, 2010); *Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010).

F.3d 8, 20 (2d Cir. 2000)). After due consideration, the Court concludes that Plaintiff's negligent misrepresentation fails because she has failed to allege the existence of a special relationship giving rise to a duty to speak on the part of Defendant.

"Under the 'duty' element, New York strictly limits negligent misrepresentation claims to situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity." *Id.* (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir. 1993) (internal quotation marks omitted)). "In the commercial context, a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the 'existence of . . . a special relationship . . . [capable of] giv[ing] rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech.'" *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996)) (alterations in original). *Kimmell* directs courts to examine the following factors to determine whether a special relationship, and a duty to provide correct information, exists: (1) whether the person making the representation held or appeared to hold unique or special expertise; (2) whether a special relationship of trust or confidence existed between the parties; and (3) whether the speaker was aware of the use to which the information would be put and supplied it for that purpose. *Id.* (quoting *Kimmell*, 89 N.Y.2d at 264) (internal quotation marks omitted).

Applying the *Kimmell* factors, the relationship between Defendant, as the manufacturer and seller, and Plaintiff as the buyer, does not rise to the level of the kind of special relationship—approaching that of privity—that would impose a duty to speak on Defendant. "[N]ot all representations made by a seller of goods . . . will give rise to a duty to speak with care." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) (quoting *Kimmell*, 89 N.Y.2d

24

at 263). "Instead, the law of negligent misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified." *Id.* (citing *Kimmell*, 89 N.Y.2d at 263).

The Amended Complaint's allegations here only describe a relationship between Plaintiff and Defendant which is that of an ordinary buyer and seller—which does not give rise to the kind of special relationship necessary to maintain a claim for negligent misrepresentation. *See, e.g.*, *Izquierdo*, 2016 WL 6459832, at *8 (dismissing negligent misrepresentation claim based on allegedly misleading candy packaging because "[n]othing in the complaint suggests that the transaction differs in any way from the numerous cases in this District and Circuit in which courts have held that a basic commercial transaction does not give rise to a special relationship."); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 WL 2168374, at *14 (S.D.N.Y. May 7, 2015) (dismissing New York law negligent misrepresentation claim alleging defendant's products were misleadingly labeled as organic, natural, or all natural for "failure to plead any cognizable special relationship" with the defendant, reasoning that "[d]efendant's obligation to label products truthfully does not arise from any special relationship. There is nothing approximating privity between the parties."). Because the relationship between Plaintiff and Defendant was not so close as to approach that of privity, Plaintiff has not adequately pleaded that Defendant had a duty to provide information to Plaintiff.

Accordingly, the Court dismisses Plaintiff's negligent misrepresentation claim.

**IV. Breach of Express Warranty**

To state a claim for an express breach of warranty under New York law, plaintiffs must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer*

*Companies, Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). However, "[i]n order to assert a breach of express warranty claim under New York law, 'a buyer must provide the seller with timely notice of the alleged breach of warranty.'"[2] *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244–45 (S.D.N.Y. 2020) (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013)); *see also* N.Y. U.C.C. § 2-607(3)(a) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy").

Here, the Court concludes that Plaintiff's express warranty claim fails for lack of timely notice. Plaintiff alleges only that "[she] provided or will provide notice to defendant, its agents, representatives, retailers and their employees." (Am. Comp. ¶ 90.) "That allegation is insufficient to show that the buyer provided timely notice of the alleged breach—the statement is wholly equivocal." *Campbell*, 516 F. Supp. 3d at 391. It does not allege that notice has been provided, only that Plaintiff "provided or will provide" notice.[3] "If Plaintiff had provided notice, she could have written that, rather than pleading, in essence, both that she did provide notice, and that she did not do so but will do so in the future. Plaintiff has not adequately pleaded that she in fact provided notice." *Id.*

Accordingly, the Court dismisses Plaintiff's claim for breach of express warranty. *See Lugones*, 440 F. Supp. 3d at 245 (finding that "Plaintiffs must allege some form of timely, pre-

---

[2] "Although a minority of New York State cases suggest an exception to the notice requirement in retail sales, the court declines to impose this exception in the instant action, particularly given that the exception appears to be exclusively applied where a party alleges physical, in addition to economic, injury." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143–44 (E.D.N.Y. 2018); *see also Lugones*, 440 F. Supp. 3d at 245 (following *Colella* and finding the exception "inapplicable where, as here, Plaintiffs have not alleged any physical or personal injury as a result of Defendant's alleged breach"). Here, too, Plaintiff has not alleged any physical or personal injury, so the exception is inapplicable.

[3] Plaintiff also alleges that "Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years." (Am. Compl. ¶ 91.) This allegation does not suggest that the buyer provided timely notice, as required.

litigation notice" and dismissing breach of express warranty claim for failure to provide timely notice); *Colella*, 348 F. Supp. 3d at 143–44 (dismissing express warranty claim where the complaining "ma[de] no allegations and state[d] no facts showing that notice was provided to defendant"); *Quinn*, 958 F. Supp. 2d at 544 (dismissing breach of warranty claim for failure to allege timely notice).

### V. Breach of Implied Warranty of Merchantability

On the same basis on which the Court dismissed Plaintiff's claim for breach of express warranty, the Court similarly dismisses her claim for breach of the implied warranty of merchantability. "The U.C.C.'s notice requirement for express warranty claims also applies to claims for breach of implied warranty." *Campbell*, 516 F. Supp. 3d at 392; *see also Int'l Bhd. of Teamsters Local 456 Health & Welfare Tr. Fund v. Quest Diagnostics Inc.*, No. 10-cv-1692 (RJD), 2012 WL 13202126, at *23 (E.D.N.Y. Apr. 19, 2012) (dismissing express and implied warranty claims for failure to plead that defendants were given timely notification of breach); *Hubbard v. Gen. Motors Corp.*, No. 95-cv-4362, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996) (dismissing express and implied warranty claims under Section 2-607(3) of the New York Uniform Commercial Code because the complaint "lacks any allegation that plaintiff notified [the defendant]").

### VI. Magnuson Moss Warranty Act

Plaintiff also brings a claim under the MMWA, 15 U.S.C. §§ 2301, *et seq.* (Am Compl. at 12–13.) "To state a claim under MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Gr. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015). Hence, as her state law claims for express and implied warranty fail, Plaintiff's MMWA claim similarly fails for the same reasons.

**VII.      Fraud**

To state a claim of fraud under New York law, Plaintiff must allege (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff. *Schlaifer Nance & Co. v. Estate of* Warhol, 119 F.3d 91, 98 (2d Cir. 1997). A claim of fraud must be alleged with the particularity required by Federal Rule of Civil Procedure 9(b), which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015) (quotation marks omitted). Rule 9(b) permits a plaintiff to allege scienter generally, but the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017) (summary order) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

Here, the Court concludes that Plaintiff's fraud claim fails because she has failed to plead fraudulent intent. Plaintiff's only allegation about Defendant's intent is that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers." (Am. Compl. ¶ 99.) That allegation on its own is insufficient because "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendants' 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'" *Davis v. Hain Celestial Grp.*, 297 F. Supp.3d 327, 337 (E.D.N.Y. 2018) (quoting *In re Frito–Lay N. Am., Inc. All Nat. Litig.*, No. 12-md-2413, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013)). "Moreover, while the existence of accurate information regarding the product's ingredients on the package does not

stymie a deceptive labeling claim as a matter of law, it is certainly a substantial barrier to a plaintiff seeking to plead a claim of fraud." *Campbell*, 516 F. Supp. 3d at 391.

Accordingly, the Court dismisses Plaintiff's claim for fraud.

**VIII.    Unjust Enrichment**

Under New York law, an unjust enrichment claim requires "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d. Cir. 2000) (internal quotation marks omitted). However, "unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Izquierdo*, 2016 WL 6459832, at *10 (quoting *Corsello*, 18 N.Y.3d 777 at 790–91) (internal quotation marks omitted). "And an unjust enrichment claim 'will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.'" *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 473–74 (S.D.N.Y. 2020) (quoting *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017)).

Here, the Court concludes that Plaintiff's unjust enrichment claim is duplicative of her other claims. The entirety of Plaintiff's unjust enrichment count reads: "Plaintiff incorporates by reference all preceding paragraphs. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." (Am. Compl. ¶¶ 101–02.) "Thus, the unjust enrichment claim is a mere repackaging of her other claims based on the alleged misrepresentations on the Product's packaging." *Campbell*, 516 F. Supp. 3d at 394. It "relies on the same factual allegations and the same theory of liability" as Plaintiff's other theories

of recovery. *Hesse*, 463 F. Supp. 3d at 474 (dismissing unjust enrichment claim as duplicative of other claims alleging defendant's chocolate label was misleading); *see also Alce v. Wise Foods, Inc.*, No. 17-cv-2402 (NRB), 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim as duplicative because the unjust enrichment allegations were "a mere regurgitation of those made with respect to plaintiffs' slack-fill claims under the GBL . . . .").

Accordingly, the Court dismisses Plaintiff's unjust enrichment claim as duplicative.

## IX. Injunctive Relief

Finally, Plaintiff seeks injunctive relief for Defendant "to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws." (Am. Compl. at 16.) But after considering the issue *sua sponte*, the Court concludes that Plaintiff does not have Article III standing to pursue injunctive relief because she is aware of the allegedly deceptive packaging, and therefore cannot demonstrate that she will be harmed in a similar way in the future. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*.") (citations omitted).

"A plaintiff seeking to represent a class must personally have standing." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id.* "In a deceptive business practices action under GBL §§ 349 and 350, the Second Circuit has determined that absent an intent to 'purchase the offending product in the future,' a plaintiff lacks

standing to seek injunctive relief." *Yee Ting Lau v. Pret A Manger (USA) Ltd.*, No. 17-cv-5775 (LAK), 2018 WL 4682014, at *2 (S.D.N.Y. Sept. 28, 2018) (quoting *Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018)).

The Second Circuit recently reaffirmed this conclusion in the context of a consumer confronted by allegedly deceptive packaging in *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146–49 (2d Cir. 2020). The Second Circuit reasoned the following in relevant part:

> In the first place, past purchasers are not bound to purchase a product again— meaning that once they become aware they have been deceived, that will often be the last time they will buy that item . . . . But even if they do purchase it again, there is no reason to believe that all, or even most, of the class members will incur a harm anew. Supposing that they have been deceived by the product's packaging once, they will not again be under the illusion that the boxes of the newer pastas are filled in the same way as the boxes of the older pastas. Instead, next time they buy one of the newer pastas, they will be doing so with exactly the level of information that they claim they were owed from the beginning.

*Id.* at 147–48.

As in *Berni*, Plaintiff fails to show how she is likely to be harmed again in the future in a similar way. Indeed, Plaintiff alleges that had she known the truth about the Product, she would not have purchased it or she would have paid less. (Am. Compl. ¶¶ 41, 77.) Yet, at the same time, she asserts that she "intends to, seeks to, and will purchase the Product again when she can do so with the assurance that [the] Product's labels are consistent with the Product's components." (*Id.* ¶ 59.) Thus, Plaintiff appears to say that she will not buy the product so long as the label remains misleading. Therefore, "[b]ecause [Plaintiff] admit[s] that [she] [is] unlikely to purchase the [Product] at issue, unless the [Product] [is] changed, [she] lack[s] standing to seek injunctive relief." *Sharpe*, 481 F. Supp. 3d at 101 (citing *In re Amla Litig.*, 320 F. Supp. 3d 578, 593 (S.D.N.Y. 2018) (holding that plaintiffs lacked standing to seek injunctive relief under GBL § 349 where they "adduce[d] no evidence that they are likely to repurchase the product, and indeed allege[d] that

they would not have purchased the product in the first place had they known of its alleged defects"). Accordingly, the Court denies Plaintiff's request for injunctive relief.

## X.  Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, after having the benefit of a pre-motion letter from Defendant stating the grounds on which it would move to dismiss. (ECF No. 13.) Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (alteration, footnote, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading

defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, while Plaintiff requested leave to file a Second Amended Complaint within the last sentence of her response in opposition, she has not otherwise suggested that she is in possession of facts that would cure the deficiencies that Defendants highlighted in the instant motion and that the Court highlighted in this opinion. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249–50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend); *see also Twohig*, 519 F. Supp. 3d at 169 (dismissing substantially similar claims involving vanilla flavoring in soymilk with prejudice and without leave to amend because plaintiff had already amended once after having the benefit of a pre-motion letter from defendant stating the grounds on which it would move to dismiss). Accordingly, with respect to all those claims that the Court has dismissed from the Amended Complaint, the Court will dismiss them with prejudice.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART, DENIES IN PART Defendant's motion to dismiss (ECF No. 23.) The Court GRANTS the motion with respect to Plaintiff's (1) individual claims not asserted under the Class Action Fairness Act; (2) claim for negligent misrepresentation; (3) claim for breach of express warranty; (4) claim for breach of implied warranty of merchantability; (5) claim under the Magnuson Moss Warranty Act; (6) claim for fraud; (7) claim for unjust enrichment; and (8) request for injunctive relief. The Court DISMISSES all these claims with prejudice. The Court DENIES the motion with respect to Plaintiff's consumer protection claims under GBL §§ 349 and 350.

The Court further DIRECTS Defendant to file an answer to the Amended Complaint with respect to Plaintiff's claims under GBL §§ 349 and 350 on or before April 18, 2022. The Court moreover DIRECTS the parties to confer and jointly complete and file a Case Management Plan and Scheduling Order (blank form attached hereto) by March 31, 2022. After review and approval of the Scheduling Order, the Court will issue an Order of Reference to Magistrate Judge Judith C. McCarthy for general pretrial purposes. The parties shall contact Judge McCarthy within seven (7) business days of the date of the Order of Reference to schedule a conference.

The Clerk of Court is finally directed to terminate the motion at ECF No. 23.

Dated:  March 16, 2022
       White Plains, NY

SO ORDERED:

_____

NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT                                    Rev. Jan. 2012
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x


                                                    **CIVIL CASE DISCOVERY PLAN**
                                Plaintiff(s),        **AND SCHEDULING ORDER**

          - against -


                                Defendant(s).        _____ CV _____ (NSR)


-------------------------------------------------------------x


  This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel,
pursuant to Fed. R. Civ. P. 16 and 26(f):

1.    All parties [consent] [do not consent] to conducting all further proceedings before a
      Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The parties
      are free to withhold consent without adverse substantive consequences.  (If all parties
      consent, the remaining paragraphs of this form need not be completed.)

2.    This case [is] [is not] to be tried to a jury.

3.    Joinder of additional parties must be accomplished by _____.

4.    Amended pleadings may be filed until _____.

5.    Interrogatories shall be served no later than _____, and responses thereto
      shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3
      [shall] [shall not] apply to this case.

6.    First request for production of documents, if any, shall be served no later than
      _____.

7.    Non-expert depositions shall be completed by _____.

      a.    Unless counsel agree otherwise or the Court so orders, depositions shall not be held
            until all parties have responded to any first requests for production of documents.

      b.    Depositions shall proceed concurrently.

      c.    Whenever possible, unless counsel agree otherwise or the Court so orders, non-party
            depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.     Expert reports shall be served no later than _____.

11.     Rebuttal expert reports shall be served no later than _____.

12.     Expert depositions shall be completed by _____.

13.     Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.     **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.     Any motions shall be filed in accordance with the Court's Individual Practices.

16.     This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.     The Magistrate Judge assigned to this case is the Hon. _____.

18.     If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.     The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)


SO ORDERED.

Dated:   White Plains, New York
            _____


                                            _____
                                            Nelson S. Román, U.S. District Judge